### JOHN S. JACOBS *vs.* CYRUS M. CARPENTER & another.

Suffolk.    January 17, 1894. — March 2, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Promissory Note — Discharge in Bankruptcy — New Promise by Debtor.*

If a creditor who has proved his debt, which is evidenced by a promissory note, and received a percentage thereof under composition proceedings in bankruptcy, delivers the note to the debtor as a loan upon his promise to return it, the subsequent return by him of the note does not, it not being so intended, amount to a new promise in writing by the debtor, within Gen. Sts. c. 105, § 3, (Pub. Sts. c. 78, § 3,) which will avoid the defence of a discharge in bankruptcy in an action upon the note.

The mere payment by a debtor, who has received a discharge in bankruptcy, of a sum on account of a debt which has been discharged, and which is evidenced by a promissory note, is not sufficient to raise the implication of a promise, within Pub. Sts. c. 78, § 3, such as will avoid the defence of the discharge in an action upon the note.

A debtor, after his discharge in bankruptcy, wrote to his creditor, "Enclosed please find our check for" a sum named "as an instalment of a long deferred promise; our regret is that it is not larger, but as opportunity presents itself you may be assured that you will not fail to receive tangible evidence of the purity of our intentions"; and later, "Enclosed please find our bill for" a sum named "receipted, together with our check for" another sum named "to be applied to old matters." *Held*, in an action on the debt, that the letters did not contain a new promise in writing by the debtor, within Pub. Sts. c. 78, § 3, which would avoid the defence of the discharge.

---

CONTRACT, against Cyrus M. Carpenter and Benjamin P. Lovejoy, surviving partners of the firm of Cyrus Carpenter and Company, upon three promissory notes, the first for $1,036.50, dated July 3, 1875, the second for $1,040, dated September 20, 1875, and the third for $1,040, dated September 23, 1875, each payable six months after its date to the plaintiff, and signed " Cyrus Carpenter & Co." The answer, among other defences, set up a discharge in bankruptcy. Trial in this court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows.

The notes in suit were given for money lent to the defendants at the date of the notes. The firm of Cyrus Carpenter and Company consisted at that time, and up to April, 1893, when Cyrus Carpenter died, of Cyrus Carpenter and the defendants. It appeared that, after the notes were given, the firm of Cyrus Carpenter and Company, on November 5, 1875, filed a voluntary petition in bankruptcy in the United States District Court ; that the schedules filed, duly signed and sworn to by each partner, contained the name and the residence of the plaintiff as a creditor of the firm for the amount of the notes ; that on November 23, 1875, an offer of composition was duly made by the firm, which was duly assented to in writing by the requisite number and amount of their creditors, including the plaintiff ; that such composition was duly confirmed and recorded by the court, and the defendants were thereby discharged from liability on the notes ; and that the plaintiff, with other creditors, signed the following acknowledgment and discharge: " We the undersigned, creditors of Cyrus Carpenter & Co., hereby severally acknowledge the receipt of the sums set against our respective names, in full satisfaction and discharge of our claims against them, the same being paid and received in performance of the resolution of composition in case of said Cyrus Carpenter & Co. in bankruptcy, recorded by the District Court for the District of Massachusetts on the fourth day of December, 1875. This receipt is not to impair or affect in any way the liability of any other parties upon any obligations we now hold against said Cyrus Carpenter & Co." Each of the notes was in the handwriting of Cyrus M. Carpenter, and, when produced in evidence from the possession of the plaintiff, bore the indorsement, " Received on

the within ten per cent in settlement of composition act," which was in the handwriting of Cyrus M. Carpenter, and to which no signature of the plaintiff appeared ; these indorsements were made prior to their return to the plaintiff, and the plaintiff testified that they were not put on with his knowledge or direction.

The plaintiff sought to avoid the discharge of the defendants thus obtained in bankruptcy, on the ground that there was a new promise binding on them subsequently to those proceedings. He testified that, subsequently to the bankruptcy proceedings, he had received from the hand of Cyrus Carpenter several payments, which he had applied on the notes and receipted bills for merchandise which he had purchased of the firm of Cyrus Carpenter and Company, which bills were made out by Cyrus M. Carpenter and receipted in the handwriting of Cyrus Carpenter, and the amount of which the plaintiff had applied toward the payment of these notes ; and that, accompanying one of such payments, he received a letter, dated January 13, 1881, in the handwriting of and signed by Cyrus Carpenter in the firm name, containing the following : " Enclosed please find our check for three hundred ($300.00) dollars, together with a receipted account for $25\frac{19}{100} as an instalment of a long deferred promise ; our regret is that it is not larger, but as opportunity presents itself you may be assured that you will not fail to receive tangible evidence of the purity of our intentions." He also testified that accompanying one of the receipted accounts was a letter, dated January 28, 1888, in the handwriting of and signed by Cyrus Carpenter in the firm name, the material part of which was as follows : " Enclosed please find our bill for $54.23 receipted, together with our check for $150.00 to be applied to old matters."

On cross-examination, he testified that in 1875 he knew that the firm went into bankruptcy ; that he never had any claims against them at that time or since except these three notes ; that the notes were held by him at the time of their going into bankruptcy, and he lent them at that time to Cyrus Carpenter, who promised to and did return them to him ; that he never had any conversation with reference to the notes or their payment except with Cyrus Carpenter ; and that he never

received any communication signed or purporting to be signed by the firm where the signature was in the handwriting of any other person than Cyrus Carpenter.

On redirect examination, he testified that he received the notes back from Carpenter within a month after the bankruptcy proceedings; and that, when Carpenter handed back the notes, he said that every dollar should be paid, and if the plaintiff wanted any goods out of the store at any time it was all right.

On recross-examination, he testified that he never spoke to the other partners about that conversation until after Cyrus Carpenter died; that he did not understand that he released him or discharged him from his debt; and that he supposed the notes were good all the time.

Cyrus M. Carpenter, one of the defendants, testified that he never signed or made any agreement in writing to pay these notes notwithstanding his discharge in bankruptcy; that he never authorized any one else to do so, or to deliver any written instrument that would be a new agreement to pay the notes after his discharge in bankruptcy; that he never knew up to the time of his father's death that it was pretended by the plaintiff that the notes were good for the full amount; that during all those years he never had a word with the plaintiff with reference to this matter, except the time that he paid him the dividend; and that he did not know that these letters of his father had been written to the plaintiff until this action was brought.

Benjamin P. Lovejoy, one of the defendants, testified that he knew of the payment of the composition dividend to the plaintiff; that from that time up to the time of the death of Cyrus Carpenter, he had no knowledge that the plaintiff intended to hold these notes against the firm; that he never had any conversation with the plaintiff in reference to them from the time of the discharge in bankruptcy up to the time of Cyrus Carpenter's death; that he never agreed to pay them, nor authorized any one else to pay them; that he did not know that any pretence was made that a new promise had been made, either by the delivery of the notes or a written instrument or letter; that the first he heard of this new claim was since the death of Cyrus Carpenter; that he never knew of the writing of these letters up to the death of Cyrus Carpenter; and that he never

authorized Cyrus Carpenter to sign these letters on his behalf, and had no knowledge of them.

At the close of the evidence, having ruled that the discharge of the defendants in bankruptcy, as shown by the evidence, would bar the present action, the judge ruled that there was no sufficient evidence that the notes were made new notes by the redelivery of them, so as to bind the defendants, and made the following ruling: " I assume that these notes were properly made and good notes originally; but I rule that, although there is evidence on which the jury might find that it was the intention on the part of the promisors to pay these notes after bankruptcy, they might find actual payments on account of the notes, they might find that the letters referred to these notes, but still there is no evidence of a promise to pay that would bind them to pay "; and ordered a verdict for the defendants. The plaintiff alleged exceptions.

*J. T. Wilson,* for the plaintiff.

*H. G. Allen,* for the defendants.

ALLEN, J. By Gen. Sts. c. 105, § 3, re-enacted in Pub. Sts. c. 78, § 3, it was necessary for the plaintiff to show a new promise in writing. The return by Carpenter of the notes did not amount to such new promise, and it was not intended to be such. The plaintiff had the rightful possession of them. The payment of the percentage under the composition did not entitle the makers to have the notes surrendered to them. The plaintiff, having possession, lent them to Carpenter, who returned them, not as new notes or notes having any new force by reason of such return, but as documents belonging to the plaintiff which he had borrowed and promised to return.

The subsequent payments were not a new promise in writing. *Cambridge Institution for Savings* v. *Littlefield,* 6 Cush. 210. *Merriam* v. *Bayley,* 1 Cush. 77. And the letters contained no new promise. *Bigelow* v. *Norris,* 139 Mass. 12; *S. C.* 141 Mass. 14. *Dennan* v. *Gould,* 141 Mass. 16. *Kenney* v. *Brown,* 139 Mass. 345. *Elwell* v. *Cumner,* 136 Mass. 102.

*Exceptions overruled.*